UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

EKREM SEJDIJA,

                    Plaintiff,

      - against -

FIRST QUALITY MAINTENANCE, L.P., ET
AL.,

                Defendants.
_____

22-cv-4487 (JGK)

MEMORANDUM OPINION
AND ORDER

JOHN G. KOELTL, District Judge:

    The plaintiff, Ekrem Sejdija, brought this action against the defendants, First Quality Maintenance, L.P. ("FQM"), Alliance Building Services, LLC ("ABS"), and VBG 990 AOA LLC ("VBG") seeking alleged unpaid overtime wages in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 203 et seq., and the New York Labor Law ("NYLL"), N.Y. Lab. Law § 650 et seq.

    The defendants have now moved to dismiss the action for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) or, in the alternative, to compel arbitration. For the reasons that follow, the defendants' motion to dismiss is **denied**, the motion to compel arbitration is **granted** in part, and the case is **stayed** pending the arbitrator's decision on the issues that must be decided by the arbitrator.

I.

    Unless otherwise noted, the following facts are taken from the Complaint, ECF No. 1, and are accepted as true for purposes

of this motion. The plaintiff, Ekrem Sejdija, worked as a
"handyman and porter[,] . . . perform[ing] manual and physical
work . . . including maintenance and repairs" in a New York City
building that was owned by VBG. Compl. ¶¶ 7-8, 16.[1] The building
was initially managed by ABS but was later managed by FQM, who
was ABS's "successor in interest" to management of the building.
Id. ¶¶ 9-10. The plaintiff alleges that all of VBG, ABS, and FQM
"individually and/or jointly controlled" the plaintiff's
employment." Id. ¶ 12.

The plaintiff was employed by the defendants from March 15,
2017 to September 21, 2021. Id. ¶ 17. As part of his employment,
the plaintiff was "paid $56.41 an hour" and was "provided an
apartment valued at $8,600 a month." Id. ¶ 18 n.1. The plaintiff
alleges that the value of the apartment should be included in
calculating his hourly wage rate, resulting in an alleged hourly
rate of "about $106 an hour." Id. ¶ 18. The plaintiff "worked
approximately 55-60 or more hours each week . . . 7 days a week
- with the exception of about 2-4 weeks each year." Id. ¶ 19.
The defendants paid the plaintiff for overtime hours at a rate
of $84.62 per hour "for about 10-12 overtime hours each week."
Id. ¶ 20. The plaintiff alleges that the correct overtime rate

---

[1] The defendants state that the plaintiff was employed by
the building as a "resident superintendent." Weinberg Decl., ECF
No. 19, ¶ 4.

was $159 per hour, resulting in the alleged "underpayment of
overtime wages." Id. The plaintiff also alleges that the
defendants deducted "60 minutes or more each day" from the
plaintiff's work hours, because the plaintiff did not receive a
"meal break within the meaning of the FLSA and the NYLL." Id.
¶ 21. The plaintiff also allegedly worked "on-call for an
additional 20-30 hours each week for which he was not paid any
wages." Id. ¶ 22.

The plaintiff also alleges that the defendants did not
provide the plaintiff with the proper notice of wage statements
required under the NYLL. Id. ¶ 24-25.

The plaintiff was a member of the Services Employees
International Union Local 32BJ (the "Union"). Weinberg Decl.,
ECF No. 19, ¶ 2. ABS and FQM were members of the Realty Advisory
Board and Labor Relations, Inc. ("RAB"). Id. The Union and RAB
entered into a collective bargaining agreement, and the
defendants claim that the plaintiff was "an employee covered by
and subject to the terms of" the collective bargaining
agreement. Id.

The plaintiff brings claims pursuant to the FLSA and the
NYLL, alleging that the defendants did not pay the plaintiff the
proper overtime rate of 1.5 times his hourly rate of pay and
that the defendants did not provide the plaintiff with the
notices required by the NYLL.

3

## II.

"A case is properly dismissed for lack of subject-matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000).[2] To prevail against a motion to dismiss for lack of subject-matter jurisdiction, the plaintiff bears the burden of proving the Court's jurisdiction by a preponderance of the evidence. Id. In considering such a motion, the Court generally must accept as true the material factual allegations in the complaint. See J.S. ex rel. N.S. v. Attica Cent. Schs., 386 F.3d 107, 110 (2d Cir. 2004). However, the Court does not draw all reasonable inferences in the plaintiff's favor. Id. Indeed, where jurisdictional facts are disputed, the Court has the power and the obligation to consider matters outside the pleadings, such as affidavits, documents, and testimony, to determine whether jurisdiction exists. See APWU v. Potter, 343 F.3d 619, 627 (2d Cir. 2003); Kamen v. Am. Tel. & Tel. Co., 791 F.2d 1006, 1011 (2d Cir. 1986).

In deciding a motion to compel arbitration, "courts apply a standard similar to that applicable for a motion for summary

---

[2] Unless otherwise noted, this Memorandum Opinion and Order omits all internal alterations, citations, footnotes, and quotation marks in quoted text.

4

judgment." <u>Nicosia v. Amazon.com, Inc.</u>, 834 F.3d 220, 229 (2d Cir. 2016). Thus, a court should "consider all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits." <u>Id.</u> If there is no "genuine issue of material fact" as to the arbitrability of the dispute, the Court may decide the motion without a trial. <u>Schnabel v. Trilegiant Corp.</u>, 697 F.3d 110, 113 (2d Cir. 2012). The facts relevant to the motion to compel arbitration are not disputed in this case.

The Federal Arbitration Act, 9 U.S.C. §§ 1 <u>et seq.</u>, provides that agreements to arbitrate are valid and enforceable, "save upon such grounds as exist at law or in equity for the revocation of any contract." <u>Id.</u> § 2. Validity, revocability, and enforceability of arbitration agreements are determined by reference to state law. <u>Arthur Andersen LLP v. Carlisle</u>, 556 U.S. 624, 629-31 (2009).

The party seeking arbitration bears the initial burden of showing that an agreement to arbitrate existed. <u>Hines v. Overstock.com, Inc.</u>, 380 F. App'x 22, 24 (2d Cir. 2010). The burden then shifts to the party resisting arbitration to show that the agreement is inapplicable or invalid. <u>Id.</u>

**A.**

The defendants argue primarily that the plaintiff is bound to the 2018 Apartment Building Agreement ("ABA"), ECF No. 19-1, a collective bargaining agreement which provides for mandatory arbitration for certain disputes between the plaintiff and his employers. The defendants claim that "[a]t all relevant times, the terms and conditions of [the] [p]laintiff's employment, including wages, hours and benefits, were governed by the ABA." Defs.' Memo., ECF No. 20, at 3. The defendants argue that the plaintiff's claims under the FLSA and the NYLL are pre-empted by Section 301 of the Labor Management Relations Act ("LMRA") because the Court would have to interpret the terms of the ABA in order to resolve those claims. Id. at 11.

Section 301 of the LMRA provides for federal court jurisdiction over violations of collective bargaining agreements. See 29 U.S.C. § 185(a) ("Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties."). Section 301 is understood as "a congressional mandate to the federal courts to fashion a body of federal common law to be used to address disputes arising out of labor contracts." Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 209 (1985); see also Textile Workers v. Lincoln Mills, 353 U.S.

448, 456 (1957). "[I]f the resolution of a state-law claim depends upon the meaning of a collective-bargaining agreement, the application of state law . . . is pre-empted and federal labor-law principles . . . must be employed to resolve the dispute." Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 405-06 (1988). State law claims are pre-empted by Section 301 if they are "inextricably intertwined with consideration of the terms of [a] labor contract." Allis-Chalmers, 471 U.S. at 213. "[W]hen resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim, or [be] dismissed as pre-empted by federal labor-contract law." Vera v. Saks & Co., 335 F.3d 109, 114 (2d Cir. 2003). Claims under the federal FLSA may also be pre-empted by Section 301 if those claims are "inextricably intertwined" with the terms of a collective bargaining agreement. See, e.g., Johnson v. D.M. Rothman Co., 861 F. Supp. 2d 326, 332-33 (S.D.N.Y. 2012); Hoops v. Keyspan Energy, 822 F. Supp. 2d 301, 306-09 (E.D.N.Y. 2011).

As an initial matter, the defendants have adduced sufficient evidence showing that the plaintiff was a member of the Union and, therefore, subject to the terms of the ABA. See, e.g., ECF No. 19-2 (detailing an arbitration dispute between the plaintiff and the defendants in which the plaintiff was

7

represented by the Union). The plaintiff also does not dispute that he was subject to the terms of the ABA. Rather, the plaintiff contends that the scope of the ABA's mandatory arbitration clause does not cover the issues that the defendants seek to arbitrate.

The principal dispute in this case is whether the value of the apartment provided to the plaintiff should be included in calculating the plaintiff's hourly wage rate for purposes of overtime. The FLSA provides that "the cost of board, lodging, or other facilities shall not be included as a part of the wage paid to any employee to the extent it is excluded therefrom under the terms of a bona fide collective-bargaining agreement." 29 U.S.C. § 203(m). In turn, the ABA provides that "[t]he value of the apartment and services provided therewith such as gas, electric and business phone, shall not be treated as or included for any purpose in the wage, remuneration or other income of such employee to the extent permitted by law." ABA at art. XIX, § 24. The ABA also provides that "[a] Contract Arbitrator shall have the power to decide all differences arising between the parties to this Agreement as to interpretation, application, or performance of any part of this Agreement, and such other issues as are expressly required to be arbitrated before the Arbitrator." Id. at art. VI, § 1.

"The function of the court is very limited" when determining whether a particular arbitration clause covers a dispute, and "is confined to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract." United Steelworkers of Am. v. Am. Mfg. Co., 363 U.S. 564, 567-68 (1960). In this case, the FLSA expressly provides that the cost of the apartment provided to the plaintiff is not included in calculating the plaintiff's hourly wage rate "to the extent it is excluded therefrom under the terms of a bona fide collective-bargaining agreement," 29 U.S.C. § 203(m), and the ABA provides that "[t]he value of the apartment . . . shall not be treated as or included for any purpose in the wage, remuneration or other income" of the plaintiff. ABA at art. XIX, § 24. These provisions show that one of the key elements of the plaintiff's claim, whether the value of the apartment is included in calculating his hourly compensation, is controlled by the collective bargaining agreement or, at the very least, that resolving the question of whether the value of the apartment should be included would be inextricably intertwined with the ABA.

The ABA expressly provides against the inclusion of the value of the apartment when calculating the plaintiff's compensation, and the plaintiff challenges this provision. Resolving the parties' dispute over whether the rental value of

the apartment provided to the plaintiff should be included in the plaintiff's compensation would therefore require an interpretation the terms of the ABA. See Ellis v. HarperCollins Publishers, Inc., No. 99-cv-12123, 2000 WL 802900, at *2 (S.D.N.Y. June 21, 2020) ("Because the reported violation is based on a failure to pay union employees in accordance with the terms of the CBA, however, this violation is preempted by Section 301 of the LMRA." (emphasis added)); see also Garcia v. Allied Parking Sys., 752 N.Y.S.2d 316, 317-18 (App. Div. 2002) (dismissing state NYLL claims as pre-empted by Section 301 of the LMRA where those claims "necessarily require [an] interpretation of the collective bargaining agreement"). Accordingly, this is a case where "the Court cannot address [the plaintiff's claims] without digging into forbidden ground." Johnson, 861 F. Supp. 2d at 333.

The plaintiff also claims that he was not paid overtime wages for hours spent working outside of his normal working hours. However, the issue of whether those hours are properly considered overtime hours is also governed by the terms of the ABA. The ABA provides that "[t]he standard workweek shall consist of five days (40 hours) but the two (2) days off in such workweek need not be consecutive," and that "[i]n all other respects the building's present practices as to the Superintendent's duties shall continue and, as heretofore, the

Superintendent shall take care of emergencies. If he/she is required by the Employer to perform other than emergency work on his days off, he/she shall receive equivalent time off during the same workweek or a day's pay at the time and one-half rate." ABA at art. XV, § B(2)(a)-(b). The ABA does not define or otherwise reference what constitutes "emergency work." Id. However, in order to determine whether the plaintiff's extra hours worked constituted overtime hours, it is necessary to determine whether the plaintiff was performing "emergency work" during those hours. Id. Because the ABA does not define emergency work, "the plain language of the [ABA] does not indicate a clear answer," and determining what constitutes emergency work would require interpretation of the ABA, which is forbidden under Section 301 of the LMRA. Johnson, 861 F. Supp. 2d at 333. Accordingly, the issue of whether the extra hours worked by the plaintiff are properly considered overtime hours is also pre-empted by Section 301 of the LMRA.

The plaintiff argues that the language of the ABA "does not even remotely satisfy the clear and unmistakable" standard that must be satisfied in order to submit statutory claims to arbitration pursuant to a collective bargaining agreement, and therefore that the ABA does not mandate arbitration on the question of the value of the plaintiff's provided apartment and the plaintiff's extra hours worked. Pl.'s Opp., ECF No. 22, at

6; see also id. at 17-18. However, arbitrating these two predicate issues of contract interpretation would not also require the plaintiff to arbitrate his statutory wage-and-hours claims under the FLSA and the NYLL.[3] Because the statutory claims do not need to be arbitrated, but instead only contractual issues applicable to the eventual judicial resolution of those statutory claims, the application of the clear and unmistakable standard is inapposite. See Lawrence v. Sol G. Atlas Realty Co., 841 F.3d 81, 83 (2d Cir. 2016) (distinguishing that the provisions at issue did not "clearly and unmistakably" compel arbitration of "statutory (as opposed to contractual) causes of action").[4]

The plaintiff also argues that, on a motion to dismiss, the Court must accept as true his allegation that the value of the provided apartment was included in the plaintiff's compensation. However, the Court need not accept such conclusory allegations

---

[3] The defendants "concede [that] the ABA does not ordinarily require its members' FLSA and NYLL claims to be subjected to compulsory arbitration," and agree that if the plaintiff had "attempted solely to vindicate his statutory rights under wage and hour law, without implicating the ABA or requiring analysis of its terms," the plaintiff "would have no obligation to exhaust the ABA's grievance procedures," including arbitration. Defs.' Reply at 7.

[4] The plaintiff also argues that the ABA expressly provides for the exclusion of wage-and-hours claims from mandatory arbitration. See ABA at art. XIX, § 47. However, this argument is unavailing because the plaintiff is not being compelled to arbitrate his statutory wage-and-hours claims.

as true on a motion to dismiss, see Ashcroft v. Iqbal, 556 U.S.
662, 681 (2009), and, in any event, it would be improper for the
Court to resolve this dispute as to the interpretation of the
collective bargaining agreement in favor of the plaintiff in
view of the agreement's arbitration clause. Finally, the
plaintiff argues that "one of the rights live-in supers like
[the] [p]laintiff has under the FLSA is for the value of the
apartment to be included in the calculation of overtime wages,"
Pl.'s Opp. at 18, and that the ABA provides: "Nothing herein
shall be construed to affect any rights a Superintendent may
have under the Fair Labor Standards Act." ABA at art. XV,
§ B(1)(b). However, the plaintiff's rights under the FLSA are
not affected by requiring arbitration of certain predicate
issues because the plaintiff may continue pursuing his FLSA
wage-and-hours claims in this Court after arbitrating the
disputes regarding the value of the apartment provided and the
extra hours worked.[5]

---

[5] The plaintiff also argues that the motion to compel
arbitration should be denied because he has demanded a jury
trial, and because the defendants "waived arbitration" "by
asking this Court instead of an arbitrator to first decide the
merits of the claims." Pl.'s Opp. at 4, 9. The plaintiff cites a
number of cases for the proposition that he is "entitled to a
jury trial," and therefore that arbitration should be denied.
Pl.'s Opp. at 4. However, those cases are inapposite because
they concerned whether there existed a valid agreement to
arbitrate in light of various factual disputes. See, e.g.,
Barrows v. Brinker Rest. Corp., 46 F.4th 45, 50-54 (2d Cir.
2022). In this case, the plaintiff does not dispute that he is

Because resolving these two issues would require interpretation of the ABA, they are pre-empted by the LMRA and must be resolved according to the procedures provided for in the ABA. The ABA provides that "all differences arising between the parties to this Agreement as to interpretation, application, or performance of any part of this Agreement" are to be decided by arbitration. ABA at art. VI, § 1. The ABA also provides that "[t]he procedure herein with respect to matters over which a Contract Arbitrator has jurisdiction shall be the sole and exclusive method for the determination of all such issues." Id. at art. VI, § 3. Accordingly, the parties are required to arbitrate their disputes as to whether the value of the provided apartment should be included when calculating the plaintiff's compensation and whether the plaintiff's extra hours worked properly constituted overtime hours.

**B.**

Having decided that these two issues should be arbitrated, the substance of the remainder of the plaintiff's claims under

---

subject to the terms of the ABA. In any event, there is no state action on the part of the defendants that could constitute a violation of the plaintiff's constitutional rights. See Desiderio v. Nat'l Ass'n of Sec. Dealers, Inc., 191 F.3d 198, 206-07 (2d Cir. 1999). Moreover, the defendants, by moving to compel arbitration at the earliest opportunity, have also not waived arbitration because they have not "engaged in litigating any substantial merits questions before seeking arbitration." Nicosia v. Amazon.com, Inc., No. 21-2624-cv, 2023 WL 309545, at *4 n.2 (2d Cir. 2023).

14

the FLSA and the NYLL are not subject to the terms of the ABA because those claims are not "inextricably intertwined" with the terms of the ABA, and are therefore not pre-empted by Section 301. <u>Allis-Chalmers</u>, 471 U.S. at 213.

In order to subject statutory claims to mandatory arbitration pursuant to a collective bargaining agreement, the agreement must contain a "'clear and unmistakable' waiver of [the] [p]laintiff's right to pursue his statutory claims in federal court." <u>Lawrence</u>, 841 F.3d at 83. "[T]he inclusion of such claims must be unmistakable, so that the wording is not susceptible to a contrary reading." <u>Id.</u> The Court of Appeals for the Second Circuit has interpreted the "clear and unmistakable" standard to require that a collective bargaining agreement incorporate "specific references . . . either to the statutes in question or to statutory causes of action generally." <u>Id.</u> at 84.

The arbitration provision in this case does not clearly and unmistakably waive the plaintiff's right to pursue his FLSA and NYLL claims in federal court. The arbitration provision does not reference either the FLSA or the NYLL specifically or statutory causes of action generally, instead providing only that "[a] Contract Arbitrator shall have the power to decide all differences arising between the parties to this Agreement as to interpretation, application, or performance of any part of this Agreement," and that "[t]he procedure herein with respect to

15

matters over which a Contract Arbitrator has jurisdiction shall be the sole and exclusive method for the determination of all such issues." ABA at art. VI, §§ 1, 3. However, the language of "all such issues" over which "a Contract Arbitrator has jurisdiction" does not necessarily include the plaintiff's statutory causes of action because such language is too general, and does not clearly and unmistakably preclude the plaintiff's right to pursue those claims in federal court. See Rasmy v. Marriott Int'l, Inc., No. 16-cv-4865, 2017 WL 773604, at *10 (S.D.N.Y. Feb. 24, 2017) ("Arbitration clauses that are very general, mandating, for example, arbitration of all 'matters under dispute' are insufficient, because such language could be understood to mean matters in dispute under contract — and not necessarily statutory claims."); see also id. at *11 (finding that the CBA did not cover statutory claims because it "fail[ed] to cite any statutes, to explicitly reference 'claims' or 'causes of action,' or to otherwise specifically suggest that it cover[ed]" statutory claims).

Instead, the ABA provides: "[I]n the event that an Employee . . . asserts statutory wage and hour claim(s) against the Employer(s), including claims for unpaid . . . overtime pay, prior to the filing of any such claim(s) in court, the Employer and Employee shall engage in mandatory mediation to attempt to narrow or resolve the claim(s)," but "[i]n the event that

Employee(s) initiate litigation in a judicial forum on their wage and hour claims without first submitting to the mediation process described in this section . . . the Employer shall not seek dismissal of the judicial action but may seek to have the action stayed pending the completion of the mediation provided for herein." ABA at art. XIX, § 47.[6] The ABA thus does not provide a clear and unmistakable waiver of the plaintiff's federal forum rights because it does not explicitly reference the exclusion of any statutes, causes of actions, or any statutory claims from federal judicial relief. Instead, the ABA contemplates that a plaintiff bringing a wage-and-hours claim may seek relief in a judicial forum provided that the plaintiff engages first in mediation before seeking such relief. In this case, the parties have already participated, unsuccessfully, in mediation. See ECF No. 13. The plaintiff is therefore free to pursue his statutory FLSA and NYLL claims in federal court.

The plaintiff does not seek unpaid overtime wages pursuant to the terms of the ABA. Instead, the plaintiff seeks unpaid overtime wages which are provided for separately by statute under the FLSA and the NYLL. See Polanco v. Brookdale Hosp. Med. Ctr., 819 F. Supp. 2d 129, 134-35 (E.D.N.Y. 2011) (finding that

---

[6] The ABA also provides that, with respect to the disputed "emergency work" hours, "[n]othing herein shall be construed to affect any rights a Superintendent may have under the Fair Labor Standards Act." ABA at art. XV, § B(2)(b).

both the FLSA and the NYLL provide "independent statutory
right[s]" "separate and distinct from employees' contractual
rights arising out an applicable collective bargaining
agreement"). Accordingly, the plaintiff's claims do not arise
under the terms of the ABA and, with the exception of the two
issues identified above, do not require interpretation of the
ABA. Because these claims are purely statutory, they are not
inextricably intertwined with the terms of the ABA and therefore
are not subject to mandatory arbitration pursuant to the terms
of the ABA.

However, in order to adjudicate the plaintiff's statutory
wage-and-hours claims, there must first be a determination as to
whether the value of the plaintiff's provided-for apartment
should be included in calculating the plaintiff's compensation,
and whether the plaintiff's extra hours worked were properly
considered overtime hours. Because the ABA provides that those
disputes must be resolved by mandatory arbitration, the
resolution of those issues must first be determined by an
arbitrator before the merits of the plaintiff's statutory claims
can be adjudicated.

Once those issues have been decided by an arbitrator, there
is no reason that the plaintiff should not be able to continue
pursuing his statutory claims in this Court. See, e.g., Vadino
v. A. Valey Engineers, 903 F.2d 253, 266 (3d Cir. 1990) ("If

those wages have been determined by the appropriate procedures

to be in nonconformance with the collective bargaining

agreement, we see no reason why the employee could not enforce

his or her right to the correctly computed overtime wages by

a[n] FLSA action."); see also Barrentine v. Arkansas-Best

Freight Sys., Inc., 450 U.S. 728, 737 (1981) ("While courts

should defer to an arbitral decision where the employee's claim

is based on rights arising out of the collective-bargaining

agreement, different considerations apply where the employee's

claim is based on rights arising out of a statute designed to

provide minimum substantive guarantees to individual workers.").

Accordingly, this case is **stayed** while the parties arbitrate the

issues that must be decided by the arbitrator.

## CONCLUSION

The Court has considered all the arguments of the parties.

To the extent not specifically addressed above, the arguments

are either moot or without merit. For the foregoing reasons, the

parties should arbitrate their disputes as to whether the value

of the provided apartment should be included in the calculation

of the plaintiff's compensation and whether the plaintiff's

extra hours worked constituted overtime hours. The case is

**stayed** pending the arbitrator's decision, and the defendants'

motion to dismiss is **denied**. The parties should advise the Court

of the arbitrator's decision within 7 days of that decision. The

19

parties may continue this litigation after arbitration has been completed. The Clerk is directed to close all pending motions.

**SO ORDERED.**

Dated:     New York, New York
           February 17, 2023

                                    John G. Koeltl
                              United States District Judge

20